"O"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KATHLEEN HARRINGTON, | ) | Case No. CV 02-04809 AN |
| Plaintiff, | ) ) | MEMORANDUM AND ORDER RE MOTION FOR ATTORNEYS FEES |
| v. | ) ) | PURSUANT TO 42 U.S.C. §406(b) |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security Administration, | ) ) | |
| Defendant. | ) ) | |

## I. BACKGROUND

Plaintiff's counsel, Marc V. Kalagian, a partner of the Law Offices of Rohlfing & Kalagian, has filed a motion for attorneys fees (docket item #14) ("Motion"). His Motion is made pursuant to 42 U.S.C. § 406(b) and he seeks an order awarding him §406(b) fees in the gross amount of $25,000.00, less $3,300.00 of EAJA fees previously paid, for net § 406(b) fees of $21,700.00. Counsel represents 21.6 attorney hours and 3.4 paralegal hours were expended to obtain a remand that ultimately resulted in a recovery of $177,028.00 of Title II benefits for his client in this case. The Commissioner has filed a response that provides an analysis of the fee request without taking a position (docket item #21). Counsel has filed a reply (docket item # 22). In response to the Court's order dated May 16, 2007 (docket item #19) ("5/16/07 Order"), Counsel has also filed a supplemental declaration dated May 21, 2007 (docket item #20).

1

**II.  Discussion**

2

**A.     Standard of Review**

3         Under § 406(b), the Court may award a "reasonable" amount of attorneys fees to a

4 successful claimant's counsel, but the fee cannot exceed 25 percent of the total of the past-

5 due benefits awarded to the claimant.

6         In *Gisbrecht v. Barnhart*, 535 U.S. 789, 122 S. Ct. 1817 (2002), the Supreme Court

7 resolved a division among the Circuits on the method of calculating § 406(b) fees.  The

8 *Gisbrecht* majority found § 406(b) is designed to control, not displace, contingency fee

9 agreements in social security cases.  535 U.S. at 793, 807.  In doing so, the Court expressly

10 rejected the "lodestar method" used by several circuits (including the Ninth Circuit),

11 primarily because it was "designed to govern the imposition of fees on the losing party"

12 in fee-shifting cases; in contrast, claimant's attorneys in social security cases are "paid

13 directly with funds withheld from their clients' benefits awards[.]"  *Id.* at 804 n. 13, 807.

14         However, the *Gisbrecht* majority did not find contingency fee agreements were

15 reasonable *per se* even if the fees were capped at or below § 406(b)'s statutory ceiling of

16 25 percent of the back benefits awarded.  Instead, the Court held § 406(b) instructs lower

17 federal courts to make a reasonableness check that principally credits the contingency fee

18 agreement (if the contract does not exceed the 25 percent statutory cap), and then requires

19 the claimant's attorney to show "the fee sought is reasonable for the services rendered."

20 535 U.S. at 807.  *Gisbrecht* held "the character of the representation and the results the

21 representative achieved" may justify a reduction.  *Id.* at 808.  Examples warranting a fee

22 reduction include: (1) counsel's "substandard" representation[1]; (2) counsel's delay (which

23 may justify a reduction to prevent counsel from profiting from the accumulation of benefits

24 while the case is pending due to any foot-dragging) and (3) "*if the benefits are large in*

25 *comparison to the amount of time counsel spent on the case* [thereby resulting in a

26

27 _____

28     [1]    The *Gisbrecht* majority apparently recognized some claimant's counsel manage to achieve a successful result for the clients in spite of themselves.

1    windfall], *a downward adjustment is similarly in order."* ("windfall factor"). *Id.* at 808

2    (citations omitted and emphasis added).

3         As of the date of this Order, the Ninth Circuit has not issued a published opinion

4    discussing *Gisbrecht* in the context of a §406(b) fee request in a social security case.

5    However, on April 24, 2007, a three judge panel of the Ninth Circuit did so in an

6    unpublished plurality opinion. *Black v. Astrue,* unpub. op. at *1 (9th Cir. (Cal), filed Apr.

7    24, 2007), 2007 WL 1202886.[2/]   The *Black* majority held that a district court abused its

8    discretion in reducing a §406(b) fee request by "focus[ing] on a lodestar-type of calculation

9    rather than crediting the contingency fee agreement and then performing a reasonableness

10   check." *Id.*  On remand, the Court instructed the district court to "consider most of the

11   reasonableness factors noted in *Gisbrecht*, including the attorney's risk of loss, the nature

12   and character of the representation, future benefits accruing to the petitioner from counsel's

13   work, delays caused by counsel and other uncertainties[, and] the claimant's failure to

14   object to the fee award or counsel's own reduction of the fees from the amount due under

15   the contingency fee agreement." *Id.*

16        In light of the foregoing, the Motion shall be evaluated in light of the factors

17   discussed in *Gisbrecht* and *Black*.

18   **B.    Analysis**

19        **1.    The Contingency Fee Agreement**

20        The Motion is supported by a copy of the mutually executed contingency fee

21   agreement between the plaintiff and Counsel's law firm. [Motion, 5/09/07 Declaration of

22   Marc V. Kalagian ("Kalagian Decl."), ¶2. Ex. 1.]  The contingency agreement establishes

23   the plaintiff agreed to pay attorney fees corresponding to 25 percent of the back benefits

24   awarded for work before the Court -- the statutory maximum.  The record does not indicate

25   the contingent fee agreement was the product of fraud, coercion, or overreaching.  The

26   proof of service attached to the Motion establishes that Counsel served a copy of the

27       ————————————

28       [2/]    Pursuant to FRAP 32.1, *Black* is cited for its persuasive guidance.

1  Motion on his client, and the Court's records do not show the plaintiff has filed any

2  objections to the Motion despite having an opportunity to do so.

3        Following a post-remand hearing, the plaintiff's application for Title II benefits was

4  granted and she received an award of $177,028.00 in back benefits.  Pursuant to the terms

5  of the contingency fee agreement, the plaintiff agreed to pay Counsel fees in the amount

6  of $44,257.00 ($177,028.00 x .25 = $44,257.00).  The Commissioner withheld $44,257.00

7  of the back benefits to cover Counsel's attorneys fees, which is the statutory 25 percent

8  boundary and $19,257.00 more than Counsel's pending request for §406(b) fees.

9        **2.**     **Nature and Character of Representation**

10        The Court's own records establish that Counsel has represented approximately 600

11  social security claimants in the Central District of California, including several cases that

12  were assigned to this Court.  The level of Counsel's experience and skills in representing

13  his clients before the Court has been consistently high relative to the average social security

14  practitioner.

15        Counsel's background enabled him to represent the plaintiff before this Court after

16  plaintiff had unsuccessfully exhausted all her administrative remedies.  Counsel provided

17  representation that secured a decision remanding the matter for further administrative

18  proceedings.  On remand, the Commissioner granted plaintiff's application for benefits.

19  Counsel expended 21.6 hours of his time, and 3.4 hours of his paralegal's time, to achieve

20  a successful result.  Counsel also emphasizes the amount of time he took was well below

21  the "...33.75 hours of attorney time that is typical and reasonable for a Social Security

22  case." [Motion at 7:20-26.[3/]]    The Court finds the time spent and result achieved is a

23

24      [3/]  Mr. Kalagian's assertion is based upon a survey made in *Patterson v. Apfel*, 99
F.Supp.2d 1212, 1214 (C.D. Cal. 2000).  However, in *Patterson*, the court actually found

25  "a survey of several dozen cases in which attorney's fees were awarded in social security
cases suggests that the 33.75 hours spent by plaintiff's counsel falls within the approved

26  range."  *Patterson*, 99 F. Supp. 2d at 1214.  The survey of cases included "...*Terry v.
Bowen*, 711 F.Supp. 526, 527 (D.Ariz.1989) (granting fees under 42 U.S.C. § 406(b) for

27  37.75 hours of attorney time, noting that "[t]his is not an inordinate amount of time, and
in fact, falls right in line with one court's determination of an average.... 'An interesting in-

28                                         (continued...)

1     reflection of the high quality of representation that Counsel provided his client in this case.

2     Accordingly, the Court does not find any reduction is warranted for the substantive

3     character of Counsel's representation.

4         **3.**     **Contingency Risk Factor**

5        Having represented approximately 600 claimants in social security cases filed with

6     this Court, Counsel has a relatively large amount of available data that would enable him

7     to show his level of risk in taking this case on a contingency basis. The relevant data

8     includes: (1) his personal rate of success; (2) the rate of success of other attorneys in his

9     firm; (3) the average time he spends per case in both successful and unsuccessful cases; and

10    (4) the percentage of pre-filing cases he accepts and rejects following a pre-filing merit

11    assessment that is presumably made in compliance with Fed.R.Civ.P. 11(b).[4/] However,

12    Counsel has not proffered such data.

13        The Court finds Counsel has not shown that he incurred a significant risk in taking

14    this case on a contingency basis. This case did not involve any novel or complex issues

15    of fact and law. Counsel asserts that his law firms[5/] represent a plurality of the plaintiffs

16    in social security cases filed in this judicial district. [Motion at 11:21-23.] This case was

17    commenced on June 18, 2002. During this fiscal year, 988 social security cases were filed

18    in this judicial district. See 2002 Annual Report of the Director, Judicial Business of the

19    United States Courts, Supplemental Tables, Table S-9 at 40. According to Counsel's claim

20

21 _____

22     [3/]    (...continued)
house survey performed by Chief Judge Carl Rubin of the Southern District of Ohio and

23 encompassing seven years of data and found that the average number of hours asserted in
the fee petition was 37.3.'") (quoting *Rodriquez v. Bowen,* 865 F.2d 739, 747 (6th

24 Cir.1989)). *Id.* at note 2.

25     [4/]    Evidence of a rigorous risk avoidance practice of rejecting difficult cases at the
outset would increase an attorney's rate of success and may be indicative of a lower risk

26 of loss that justifies a reduction. Conversely, a low success rate and corresponding data
showing the attorney agrees to represent virtually every prospective client that enters his

27 office without much regard to the merits may be indicative of a higher risk of loss.

28     [5/]    The Law Offices of Lawrence D. Rohlfing, and Rohlfing and Kalagian, LLP.
[Motion at 11:22-23; Kaligian Decl., ¶11.]

1  of representing the plurality of these cases, this would mean Counsel's law firms

2  represented social security claimants in the amount of roughly 495 or more of the 988

3  social security cases filed in this judicial district for the fiscal year ending on September

4  30, 2002.   Counsel asserts that approximately 95% of his law firms' practice is social

5  security disability. [5/21/07 Supplemental Declaration of Marc V. Kalagian (docket item

6  #20) ("Supplemental Declaration"), ¶3.]   Generally speaking, attorneys who elect to

7  represent all or most of their clients on a contingent-fee basis (rather than an hourly rate)

8  typically maintain large volume practices in order to minimize and spread out the economic

9  risks of running such a law practice.   Counsel has been representing social security

10  claimants since 1990, and he is obviously well aware of the risks in maintaining such a

11  practice. Further, by electing to maintain a high volume, contingency practice representing

12  social security claimants, Counsel has factored the risk of non-payment as part of the

13  normal risk in operating his particular practice.

14      There was no risk of non-payment if Counsel succeeded because, as recognized in

15  *Gisbrecht*, the maximum amount of statutory §406(b) fees are withheld from a portion of

16  the benefits awarded to the claimant.  *Gisbrecht*, *id*. at 804 n.13.

17      Counsel has not shown that he or his firm incurred any risk of loss by advancing

18  costs to the plaintiff.   Cases brought pursuant to 42 U.S.C. §405(g) are based upon the

19  administrative transcript and pleadings, and they rarely, if ever, involve and require counsel

20  to advance costs for discovery or expert witnesses.   The most significant cost that an

21  attorney advances to a client in this type of case generally consists of the $350.00 fee for

22  filing the complaint required by 28 U.S.C. §1914(a).[6/]

23           The Court finds this factor warrants a reduction in the requested fees.

24      **4.   Delay**

25      The complaint was filed on June 18, 2002.  In accordance with the Court's Case

26

27      [6/]   The Court also notes that Mr. Kalagian and his firm rarely incur any risk of loss

28  relating to filing fees because the vast majority of their clients apply for, and are granted, leave to proceed IFP.

1   Management Order dated June 26, 2002, the parties filed the joint stipulation on February

2   26, 2003, at which time the matter was fully briefed.  Judgment was entered on September

3   27, 2004.  Therefore, the Court finds this is not a situation where the amount of back

4   benefits accumulated due to any excessive delay attributable to counsel.

5       No reduction is warranted for this factor.

6       **5.    Windfall Factor**

7       As discussed above, *Gisbrecht* instructs a downward adjustment is in order "if the

8   benefits are large in comparison to the amount of time counsel spent on the case."  *Id*. at

9   808.  Counsel obtained $177,028.00 of back benefits for his client and only spent 21.6

10  hours of attorney time and 3.4 hours of paralegal time to achieve this result.[7/]  [Motion,

11  Kalagian Decl., ¶4, Ex. 3; ¶5, Ex. 4.]

12      The Court finds the benefits are comparatively large to the time spent within the

13  meaning of *Gisbrecht*.  In an apparent attempt to meet his *Gisbrecht* burden of showing

14  "the fee sought is reasonable for the services rendered," Counsel argues his request for

15  $25,000.00 in § 406(b) fees is reasonable because the "effective hourly rates" are $1,100.03

16  for his attorney time and $363.25 for his paralegal's time.  [Motion at 21:4-8.]  He further

17  asserts these effective hourly rates are reasonable because they are comparable to the

18  average normal hourly billing rates for attorneys in a small California law firm (12 or less

19  attorneys) that are set forth in *The 2000 Small Law Firm Economic Survey* authored by

20  Altman Weil, Inc. ("2000 Survey"), and which he claims to use as a measure of his

21  suggested non-existent hourly rate. [Motion at 11:3-12:3; Kalagian Decl., ¶7, Ex. 5; ¶8, Ex.

22  6.] Despite *Gisbrecht's* express rejection of a lodestar-type of fee calculation, Counsel also

23  repeatedly attempts to use the lodestar calculation and its related principles to justify an

24  assessment of whether the contingent fee falls into the range of reasonable. [*Id.* at 11:09-

25

26  _____

27      [7/]    The time was incurred during the period from June 13, 2002, through November
    18, 2004.  The bulk of the attorney time was expended in the months of November 2002
28  and December 2002 and most of the paralegal time was expended in the months of June
    2002 and July 2002.

10; 12:10; 13:3-6; 13:7-19-14:1; 14:2-16; 15:11-12; 18:10-11.] On the other hand, Counsel "maintains the position that the lodestar analysis is dead, replete with invitation to err, and serves only to heighten the bar of obtaining adequate compensation where neither Congress nor the Supreme Court thought one appropriate." [*Id.* at 20:19-22.]

The Court finds Counsel's foregoing arguments lack merit, and that a reduction of this fee request is warranted, for the following reasons.

First, because *Gisbrecht* and *Black* have collectively made it clear that it is reversible error for district courts to use a lodestar-type of calculation in its reasonableness determination, the Court rejects Counsel's attempt to justify his fee request on this basis.

Second, the Court rejects Counsel's insistence on using the surveys as a basis for comparing whether the effective hourly rate of his fee request is reasonable because these surveys are irrelevant. The surveys are irrelevant because, in addition to being outdated, *Gisbrecht* expressly states that it is the moving "lawyer's normal hourly billing charge for noncontingent-fee cases" that is a relevant aid to the Court's reasonableness determination. *Gisbrecht*, *id*. at 808; *see also Ellick v. Barnhart*, 445 F.Supp.2d 1166, 1172 n. 18 (C.D. Cal. 2006) (in considering § 406(b) fee request made by one of counsel's associates, the Court found the survey was irrelevant because, in light of *Gisbrecht*, "rates other than the normal hourly rates of counsel's office do not materially aid the Court's assessment of reasonableness.").[8/] Counsel has failed to show that his law firms participated in these surveys or that any of the participating law firms had practices similar to his own. In this regard, the Court finds the surveys are also irrelevant because Counsel has failed to show that he actually had existing or prospective clients that were willing to pay him hourly rates that were the same or comparable to the rates in the surveys, and that he actually gave up this billable business to take the plaintiff's case on a contingency basis.

Third, the Court finds the effectively hourly rate for the amount of fees requested by

---

[8/]   This Court acknowledges that it has previously considered the hourly rates set forth in the survey in connection with prior § 406(b) fee requests. However, after further consideration, the Court finds the survey is irrelevant for the reasons stated in this Order.

1    Counsel are unreasonable and that a reduction is necessary.  In this regard, the Court finds

2    Counsel erred in computing the effective hourly rates. [*Id.*  21:4-8.]  The total amount of

3    attorney and paralegal time spent on this case was 25 hours (21.6 + 3.4).  Consequently,

4    about 86% (21.6/25) of the total time consists of counsel's time while approximately 14%

5    (3.4/25) consists of work performed by his paralegal.  Counsel seeks $25,000.00 of §

6    406(b) fees, that is, $21,500.00 for his time (.86 x $25,000.00) and $3,500.00 for his

7    paralegal's time (.14 x $25,000.00).  Therefore, the true effective hourly rates are roughly

8    $995.37 for Counsel's time ($21,500/21.6) and $1,029.41 for his paralegal ($3,500.00/3.4).

9    Applying the Court's own experience in making "reasonableness determinations in a wide

10   variety of contexts," *Gisbrecht*, *id.* at 808, the Court finds the true effective hourly rate for

11   counsel's time is considerably higher than the current hourly rates for partners in many

12   large and mid-sized law firms, let alone the rates that small firms charged back in 2002

13   (when the bulk of services were rendered in this case).   The true effective hourly rate of

14   counsel's paralegal is a record for a law firm of any size.  Regardless, the true effective

15   hourly rates establish a reduction is justified to prevent a windfall.

16        The *Gisbrecht* majority added that, in conducting the reasonableness determination,

17   district courts "...may require the claimant's attorney to submit, not as a basis for satellite

18   litigation, but as an aid to the court's assessment of the reasonableness of the fee yielded

19   by the fee agreement, a record of the hours spent representing the claimant and a statement

20   of the lawyer's normal hourly billing charge for noncontingent-fee cases." *Id.* at 808.  As

21   to the latter factor, the *Gisbrecht* majority recognized that reduction may be warranted

22   where the effective hourly rate for the § 406(b) fee request was significantly higher than

23   the requesting lawyer's normal hourly rate for billable work.

24        Counsel has provided a record of the time spent by him and his paralegal in working

25   on this case. [Motion, Kalagian Decl., ¶5, Ex.4.]   The only entry the Court questions is

26   the 1.3 hours that Counsel declares he spent on September 27, 2004, to review the Court's

27   memorandum opinion and judgment remanding this case.  The Court finds this amount of

28   time is excessive because it should not have taken an experienced attorney more than .2

1    hours of time (12 minutes) to read and digest the entire contents of an eleven page order

2    and one-page judgment. The Court finds a 1.1 hour reduction is warranted.

3          Although Counsel provided a record of the time spent, he did not disclose the normal

4    hourly billing rates for non-contingent work that his firm charged its clients during the

5    same period of time that he rendered services to the plaintiff in this case. Instead, as

6    mentioned above, Counsel declared that "[t]he vast majority of the work done by the

7    lawyers in this office is on a contingency fee basis. Any work done on an hourly basis is

8    de minimis to the overall practice. No member of the firm has an "hourly rate." [Motion;

9    Kalagian Decl. ¶ 6.]

10         Based upon Counsel's failure to provide a statement of his normal hourly rates for

11   billable matters, the Court issued an order directing him to provide this and other

12   information in a Supplemental Declaration. [5/16/07 Order (docket item #19).] The

13   5/16/07 Order pointed out that, in the *Ellick* case, Laura Lackey-Krank, one of Counsel's

14   associates, supported her petition for EAJA fees with a June 2004 declaration in which she

15   expressly represented that her "normal billing rate for matters taken on an hourly basis is

16   $220.00 per hour, and $95.45 for my paralegal." *Ellick*, 445 F.Supp.2d at 1166, 1172.

17   [5/16/07 Order at 2.] Pursuant to *Gisbrecht*, the Court's 5/16/07 Order expressly directed

18   Counsel to file and serve a Supplemental Declaration that explained:

19         [W]hether he and the members of his law firm had any billable work

20         during the relevant period. If Mr. Kalagian and his partners did not have any

21         billable work during the relevant period, or if the amount of billable work was

22         relatively small compared to the firm's contingency work in social security

23         cases, then Mr. Kalagian is directed to explain whether the lack of billable

24         work was elective or due to the firm's inability to compete with other law

25         firms for steady billable work. If the lack of billable work was involuntary,

26         then Mr. Kalagian is directed to explain and describe the type of non-

27         contingent billable work that he and his law firm was unable to obtain

28         notwithstanding a good-faith effort to garner such work.

1    [5/16/07 Order at 2-3.]

2         On May 21, 2007, Counsel filed a Supplemental Declaration (previously cited above,

3    at page 6, lines 5-6) but it did not contain all of the information he was ordered to furnish.

4     Instead, his Supplemental Declaration states, in relevant part, that: (1) "[w]e the Law

5    Offices of Lawrence D. Rohlfing and Rohfling & Kalagian, LLP, have no normal hourly

6    billing rate.  However, during the relevant period, Lawrence D. Rohlfing consulted in a

7    criminal matter at the request of the Federal Public Defender and billed at $350.00 per

8    hour[;]" (2) "[a]pproximately 95% of our practice is Social Security disability; (3)"we have

9    consistently used the 2000 and 2001 small office surveys to assess the value of the services

10   that we render" and, based upon these surveys, "as of January 1, 2000, partners are worth

11   between $250 and $336 and associates are worth between $171 and $250 per hour;" and

12   (4) that adjustments for inflation "hypothetically increase the hourly rate compensation to

13   $350.25 to $470.74 for partners and to $239.57 to $350.25 for associates."  [Supplemental

14   Declaration, ¶¶ 2-5.]

15        The Court also finds certain supplemental statements in the Supplemental

16   Declaration are evasive, misleading, and manifest Counsel's continuing failure to

17   appreciate *Gisbrecht's* focus on the moving lawyer's normal hourly billing rate as an aid

18   in the Court's reasonableness determination.  Specifically, as to Counsel's supplemental

19   statement that none of the attorneys in his firm have normal hourly billing rates, the Court

20   finds it is a non-responsive, equivocal attempt by Counsel to suggest that he never had

21   normal hourly rates during the period of time that he rendered services to the plaintiff.  Nor

22   does he explain or attempt to reconcile this supplemental statement with Ms. Lackey-

23   Krank's aforementioned *June 2004* declaration filed in *Ellick*, in which she expressly

24   represented that "[her] normal billing rate for matters taken on an hourly basis is $220.00

25   per hour, and $95.45 for my paralegal." *Ellick*, 445 F.Supp.2d  at 1172.  Although

26   Counsel and the lawyers in his law firm may no longer have normal hourly rates, Ms.

27   Lackey-Krank's declaration in *Ellick* clearly establishes that, on and before June 2004,

28   Counsel's law firm did have a normal billing rate for hourly work, and that the "normal

Page 11

1   billing rate for matters taken on an hourly basis is $220.00 per hour for attorneys and

2   $95.45 for paralegals."

3          In addition to his glaring failure to reconcile his sworn statements with Ms. Lackey-

4   Krank's statements in *Ellick*, the Court finds Counsel's attempt to suggest that none of the

5   lawyers in his firm had normal hourly billing rates during the relevant period is misleading.

6   Specifically, the Court takes judicial notice that, on October 18, 2002, and August 21,

7   2003, respectively, Counsel filed petitions for EAJA fees in two prior social security cases

8   in which he expressly represented to this Court that, "**[t]he attorneys in [C]ounsel's firm**

9   **bill for their time at $200.00 to $250.00 per hour for matters taken on a time-**

10  **expended basis.**" [*Jackson v. Barnhart*, case no. CV 02-880 (AN) (C.D. Cal.), 10/18/02

11  EAJA fee petition, ¶ 8 (emphasis added); *Fiorito v. Barnhart*, case no. CV 02-7651 (AN)

12  (C.D. Cal.), 8/21/03 EAJA fee petition, ¶ 8 (emphasis added).]  Counsel's aforementioned

13  statements in *Jackson* and *Fiorito* tend to support Ms. Lackey-Krank's sworn statement in

14  *Ellick* and simultaneously establish Counsel's pending supplemental statement is

15  misleading.

16         Further, the Court also finds this is not the first time that Counsel has not provided

17  the Court with relevant information, and attempted to mislead the Court, about his normal

18  hourly rates. [See *Birden v. Astrue*, case no. CV 03-363 AN (C.D. Cal.), 7/27/07 Amended

19  Order (docket # 30) at11:7-14:12.]  In *Birden*, as here, the Court issued an order directing

20  Counsel to file a supplemental declaration with further information about his normal hourly

21  fees in non-contingency cases.  [*Id.* at 11:7-12:6.]  In *Birden*, the Court ultimately found

22  Counsel had willfully failed to provide the Court-ordered *Gisbrecht* information, had

23  provided information that was misleading, and that a substantial reduction in the requested

24  fees was warranted "as a reminder not to engage in similar antics in the future."  [*Id.* at

25  14:5-12.]

26         Regrettably, the Court finds Counsel has once again willfully refused to disclose his

27  normal hourly rates during the relevant period because doing so would undermine his

28  persistent efforts to utilize the higher rates reflected in the irrelevant surveys, and

1    coterminously undermine his argument that his fee request would not amount to a windfall.

2     Worse, the Court finds Counsel has once again done so because he recognizes that the

3    disclosure of his true hourly rates during the relevant period would establish that, between

4    October 18, 2002 and August 21, 2003 -- around the time he rendered most of his services

5    to the plaintiff -- he and the lawyers in his firm were only capable of attracting billable

6    work in noncontingent-fee cases at hourly rates well below the 2000 rates reflected in the

7    irrelevant surveys.

8            In any event, based upon the fee petitions that Counsel filed in the *Jackson* and

9    *Fiorito* cases, the Court finds his normal hourly rate for the relevant period did not exceed

10   $250.00.  Since counsel is a name partner rather than an associate, the Court assumes,

11   without finding, that his normal hourly rate was $250.00.   As discussed above, Counsel

12   requests $25,000.00 in §406(b) fees or an award that would provide him effective hourly

13   rates of $995.37 for himself and $1,029.41 for his paralegal, respectively.  Consequently,

14   the Court finds Counsel's fee request would compel his client to pay him an effective

15   hourly rate that is nearly four times Counsel's relevant normal hourly rate

16   ($995.37/$250.00 = 3.89).   Further, based upon the June 2004 declaration that Ms.

17   Lackey-Krank filed in *Ellick*, the Court finds the true normal hourly rate for Counsel's

18   paralegal was at or below $95.45 during the relevant period.  Therefore, Counsel is

19   effectively requesting § 406(b) fees that would require his client to pay him an hourly rate

20   that is approximately 10.78 or nearly eleven times the normal rate charged for his

21   paralegal's services ($1,029.41/95.45 = 10.78).   The Court finds granting the Motion in

22   the full amount of the requested § 406(b) fees would result in a substantial windfall to the

23   detriment of the plaintiff.   While the character of the substantive work that counsel

24   performed does not warrant any reduction for the reasons discussed above, regrettably, the

25   Court finds Counsel's wilful failure to provide the Court-ordered *Gisbrecht* information,

26   and the attendant misleading nature of the aforementioned statements in his Supplemental

27   Declaration, reflects poorly upon another important aspect bearing upon the character of

28   Counsel's representation this case -- his credibility and integrity -- and that his action once

Page 13

1   again warrants a substantial reduction as a reminder not to engage in similar antics in the

2   future.   Further, Counsel is further warned that the next time the Court finds that he

3   engages in the same or similar conduct in connection with a § 406(b) Motion, the Motion

4   will be denied in its entirety without further notice as a sanction.

5   **6.      The Amount of Reasonable § 406(b) Fees**

6   In *Ellick*, the court correctly observed that *Gisbrecht* does not provide any uniform

7   rule of law or guidance in quantifying the amount of reasonable fees under § 406(b),

8   particularly where the benefits are comparatively large to the amount of time actually spent

9   by counsel.  *Ellick*, *id*. at 1173-74. "After surveying the case law, and after considering the

10  nature of the contingency risk," the court in *Ellick* concluded a downward adjustment was

11  warranted under the circumstances, and the court ultimately awarded §406(b) fees that

12  were 2.5 times the normal hourly rates of counsel and her paralegal.  *Id*.  In doing so, "[t]he

13  Court acknowledged the regrettable imprecision of its analysis."  *Id*. at 1174.

14  This Court shares some of the same concerns expressed in *Ellick*.  And while the

15  court in *Ellick* awarded §406(b) fees in an amount of 2.5 times the normal hourly rates of

16  counsel and her paralegal, the Court finds that is not warranted here because *Gisbrecht*

17  requires a case-by-case determination of whether the Claimant's counsel can satisfy his or

18  her burden of showing the requested §406(b) fees are reasonable and should not be reduced

19  due to a windfall.  *Id.* at 808.

20  After considering *Gisbrecht* and *Black*, the Court finds granting Counsel's request

21  for $25,000.00 in fees under §406(b) would require the plaintiff to pay Counsel an effective

22  hourly rate that is nearly four times Counsel's normal hourly rate for the relevant period,

23  and enhance his paralegal's effective hourly rate by nearly eleven times.  Therefore, a

24  downward adjustment is necessary.

25  Based upon the foregoing considerations, the Court finds a gross fee of $8,584.50

26  under § 406(b) is reasonable for the representation of the plaintiff in this case.  This fee is

27  1.5 times the highest presumed normal hourly rates of Counsel and his paralegal for the

28  relevant period (a *de facto* rate of $375 for counsel based upon 21.6 hours of work and

Page 14

$142.50 for his paralegal based upon 3.4 hours of work) and more than compensates Counsel for his skills in handling a straightforward case with relatively no contingent risk and, is frankly, more than he deserves given his lack of cooperation and candor in providing relevant information requested by the Court.

### III.  CONCLUSION

Based upon the foregoing considerations, the Motion is granted in part; gross fees under §406(b) in the amount of $8,584.50, to be paid out of the sums withheld by the Commissioner from the plaintiff's benefits.  Counsel shall reimburse the plaintiff the $3,300.00 previously paid by the Government under the EAJA so that Counsel's net fee is $5,284.50.

IT IS SO ORDERED.

DATED: February 19, 2008                    /s/   ARTHUR NAKAZATO
                                             ARTHUR NAKAZATO
                                     UNITED STATES MAGISTRATE JUDGE